# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# GREENSBORO DIVISION

| | |
|---|---|
| JAMES JOYCE,<br><br>        Plaintiff,<br><br>v.<br><br>FIRST AMERICAN MORTGAGE SOLUTIONS, LLC,<br><br>        Defendant. | Case No. 1:23-cv-01069<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

James Joyce ("Plaintiff" or "Mr. Joyce") brings this action on an individual basis, against First American Mortgage Solutions, LLC ("First American" or "Defendant") for actual, statutory, and punitive damages and costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et. seq*.

## INTRODUCTION

1. The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service, or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

1

2. However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them.

3. The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4. CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5. Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6. "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies." *Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

7. Congress made the following findings when it enacted the FCRA in 1970:

a) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

b) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

c) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

d) There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4).

8. Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b). Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the

3

collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

9. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

10. Since 1970, when Congress enacted the Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et. seq.*, ("FCRA"), the federal law has required CRAs to have in place and to utilize reasonable procedures "to assure the maximum possible accuracy" of the personal and financial information that they compile and sell about individual consumers.

11. The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is

4

corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

12. In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

13. The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

14. Plaintiff brings claims against Defendant First American for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit report, in violation of the FCRA, 15 U.S.C. § 1681e(b).

15. As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs, and attorneys' fees from the Defendant for its willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, as described herein.

## PARTIES

16. James Joyce ("Plaintiff" or "Mr. Joyce") is a natural person residing in Greensboro, North Carolina, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

17. Defendant First American Mortgage Solutions, LLC ("First American" or "Defendant") is a corporation with a principal place of business located at 1 First American Way, Santa Ana, CA 92707, and is authorized to do business in the State of North Carolina, including within this District. First American can be served through its registered agent, Corporation Service Company, at 2710 Gateway Oaks Drive, Sacramento, CA 95833.

18. Defendant First American is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f) and is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS
### Summary of the Fair Credit Reporting Act

21. The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

22. The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

23. Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

24. To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

25. The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

## The "Mixed File" Problem

26. A recurring and *known* issue within the credit reporting industry is the creation of "mixed files."

27. A "mixed file" occurs when personal and credit information belonging to Consumer B appears in one or more of Consumer A's credit reports.

28. The Federal Trade Commission defined a mixed credit file as a file that "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is subject to that Consumer Report." *F.T.C. v. TRW, Inc.*, 784 F. Supp. 361, 362 (N.D. Tex. 1991).

29. "Mixed files" create a false description and representation of a consumer's credit history and result in the consumer not obtaining credit or other benefits of our economy.

30. No less than three federal Courts of Appeal have held a consumer reporting agency violates 15 U.S.C. § 1681e(b) and may be found to have willfully violated the FCRA when it mixes one consumer's information into another consumer's report.

31. Notably, the Federal Trade Commission has specifically warned consumer reporting agencies to review their procedures when a mixed file occurs.

32. Despite federal and state law, Congressional mandate, federal and state enforcement actions, and thousands of consumer lawsuits, mixed credit files remain a significant problem for innocent consumers, including Plaintiff.

**Plaintiff Applies for a Debt Consolidation/Personal Loan through Members Credit Union**

33. On or around about March 21, 2023, Plaintiff completed and submitted a pre-approval application for a consolidation loan with Members Credit Union.

34. Upon information and belief, on or about March 21, 2023, First American sold a credit report it referred to as a "Property Report" about Plaintiff to Members Credit Union in response to Plaintiff's application.

35. Soon after, Plaintiff was approved for the consolidation loan. At the time, Plaintiff did not proceed with borrowing the funds.

36. Some months later, Plaintiff fell on some financially hard times due to the fact that several home repairs and the replacement of his failed stove and washing machine became necessary.

37. Plaintiff returned to Members Credit Union to revisit securing a consolidation/personal loan. Plaintiff hoped to roll his financial obligations into a single more manageable monthly payment.

38. On October 10, 2023, First American sold a credit report about Plaintiff to Members Credit Union in response to Plaintiff's credit application.

**Members Credit Union Denies Plaintiff's Credit Application**

39. On or about October 11, 2023, Members Credit Union received and reviewed First American's consumer report about Plaintiff.

40. Soon after, Members Credit Union denied Plaintiff's credit application in reliance on information contained in the First American consumer report about Plaintiff.

41. Specifically, a representative of Members Credit Union verbally communicated to Plaintiff that he did not qualify for the personal loan, due to three outstanding judgements/liens being reported on his consumer report.

42. Plaintiff was perplexed and shocked, as he knew he did not have any judgements/liens.

43. Plaintiff explained to the representative that the subject judgements/liens did not belong to him, but the representative informed Plaintiff that the application would not be able to move forward unless he was able to prove the judgements/liens did not belong to him.

44. The representative further recommended that Plaintiff contact the three major credit bureaus: Experian, Equifax, and Trans Union.

45. Plaintiff called Experian, Equifax, and Trans Union, and inquired if there were any reported judgements or liens appearing on Plaintiff's consumer reports.

46. The representatives Plaintiff communicated with from Experian, Equifax, and Trans Union informed Plaintiff that there were no judgements or liens appearing on Plaintiff's credit reports.

47. Defendant First American inaccurately published in the consumer report to Members Credit Union several pieces of information that did not belong to Plaintiff.

48. Specifically, Defendant First American inaccurately published in the consumer report to Members Credit Union three records in the "Other Liens of Record Other Records" section of its report about him that did not belong to Plaintiff.

49. Defendant First American sold a consumer report about Plaintiff to Members Credit Union that was mixed with information about another consumer.

50. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

## Plaintiff's Mixed Credit File

51. Shocked, worried, and confused, Plaintiff requested a copy of his consumer reports from Defendant.

52. Plaintiff was able to secure a copy of his consumer report issued by First American to Members Credit Union on or around October 11, 2023.

53. Upon reviewing the contents of the consumer report published by Defendant First American to Members Credit Union, Plaintiff was shocked at the appearance of several pieces of information that did not belong to Plaintiff at all.

54. Specifically, Defendant was reporting the following in the "Other Liens of Record / Other Records" section of its report to Members Credit Union:

   a) Foreign Judgment in favor of YP, LLC and YP Advertising and Publishing against James Joyce D/B/A AMPM Appliance in County Court as case number 18CV52950 in the amount of $8,110.81, filed January 31, 2018.

11

b) Default Judgment in favor of James Joyce against Citibank, N.A. in County Court as case number 22CVD4720 in the amount of $3,545.07, filed August 19, 2022.

c) Pendency Judg, Renewal in favor of Barelays Bank Delaware against James F. Joyce in County Court as case number 22CVD9315 in the amount of $1,764.16, filed December 16, 2022.

55. Plaintiff does not have any relationship to YP, LLC or YP Advertising and Publishing.

56. Plaintiff is long retired.

57. Further, Plaintiff has never had a D/B/A called AMPM Appliance.

58. Plaintiff has actually never had a D/B/A by any name.

59. Certainly, Plaintiff has never been sued by YP, LLC or YP Advertising and Publishing and has nothing to do with any type of foreign judgment to their benefit.

60. Further, Plaintiff has not sued Citibank, N.A.

61. Plaintiff has not in any way secured a judgment to his favor against Citibank, N.A.

62. Plaintiff does not even recall ever having a Citibank, N.A. account or any other relationship with Citibank, N.A.

63. Lastly, the pending judgment renewal in favor of Barclays Bank Delaware is against James *F.* Joyce.

64. Plaintiff's middle initial is not "F," in fact, Plaintiff does not have a middle name.

65. Due to Defendant's inaccurate reporting, Plaintiff was unable to secure the consolidation/personal loan that he very much needed.

66. Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available underlying public court records from Guilford County, North Carolina regarding the lien records prior to publishing Plaintiff's report to Members Credit Union.

67. Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that the lien records belong to a different consumer who is wholly distinguishable from Plaintiff by their middle name, date of birth, social security number, and address history.

68. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

69. Specifically, by reporting the aforementioned judgements/liens in the consumer report presumably about Plaintiff, despite the fact that the judgments/liens did not belong to Plaintiff, Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained within Plaintiff's credit files and consumer reports, in violation of 15 U.S.C. § 1681e(b).

70. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking loans by prejudicing their prospective lenders with inaccurate judgment/lien information.

71. Defendant's inaccurate report cost Plaintiff a loan that he very much needed.

72. As a result of the "mixed file," Defendant made it practically impossible for Plaintiff to obtain credit.

73. At all times pertinent hereto, Defendant was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

74. At all times pertinent hereto, Defendant's conduct, as well as that of its respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

75. Defendant is aware of the shortcomings of its procedures and intentionally chose not to comply with the FCRA to lower its costs. Accordingly, Defendant's violations of the FCRA are willful.

76. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's judgment/lien information mixed into Plaintiff's credit report.

# COUNT I
# 15 U.S.C. § 1681e(b)
## Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
## (Claim for Relief Against Defendant First American)

77. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

78. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

79. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

80. At all times pertinent hereto, Defendant's above-mentioned "Property Report" was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

81. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the credit reports it published concerning Plaintiff.

82. As a result of Defendant's violation of the FCRA, Plaintiff suffered damages including but not limited to, damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's judgment/lien information mixed into Plaintiff's credit report.

83. Defendant willfully violated 15 U.S.C. 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §

1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

84. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 6th day of December 2023.

16

Case 1:23-cv-01069-LCB-JEP   Document 1   Filed 12/06/23   Page 16 of 17

**CONSUMER ATTORNEYS**

By: */s/ Dawn McCraw*
Dawn McCraw, NC Bar No. 54714
CONSUMER ATTORNEYS
8245 N. 85th Way
Scottsdale, AZ 85258
T: (602) 807-1527
E: dmccraw@consumerattorneys.com
*Counsel for Plaintiff James Joyce*

17