**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**GREENSBORO DIVISION**

| | |
|---|---|
| JAMES JOYCE,<br><br>Plaintiff,<br><br>v.<br><br>FIRST AMERICAN MORTGAGE SOLUTIONS, LLC,<br><br>Defendant. | Case No. 1:23-cv-01069-LCB-JEP<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT FIRST AMERICAN MORTGAGE SOLUTIONS, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

Plaintiff James Joyce ("Plaintiff") respectfully submits this Memorandum in Opposition to Defendant First American Mortgage Solutions, LLC's ("First American") Motion for Judgment on the Pleadings [Dkt. No. 12, the "Motion" and Dkt. No. 14, "Memorandum"].

## I. INTRODUCTION

First American moves for judgment on the pleadings, contending that, taken together, the parties' allegations show beyond question that Plaintiff has no claim under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA") because the report at the heart of Plaintiff's Complaint ("the Property Report") does not fit the definition of "consumer report" as set forth in 15 U.S.C. § 1681a(d). This Court should deny the Motion because First American is wrong about both the legal definition of "consumer report" and about what the parties' pleadings do and do not establish beyond question. The FCRA's provisions make it clear that a report or communication is a "consumer report" when, among other things, it contains information that bears upon a consumer's creditworthiness

and that is used or is expected to be used as a factor in a credit application. *See* 15 U.S.C. § 1681a(d). Plaintiff alleges facts to show that the definition applies here, including that the Property Report included information (albeit, completely erroneous information) about judgment liens against him and that a lender told him directly that such information led to the denial of his loan application. First America relies upon unauthenticated documents to show that it issued the Property Report for the express purpose of providing information about the title to Plaintiff's residence, not to provide information about Plaintiff or his creditworthiness. However, the FCRA makes it clear that the issuer's intentions do not determine whether a report is a "consumer report," and First American's documents only show that there is a dispute of fact about what the Property Report was used for. Consequently, First American has failed to meet the standards set by Fed. R. Civ. P. 12(c), and its Motion should be denied.

## II. STATEMENT OF FACTS

Plaintiff's Complaint generally alleges that First American is a "consumer reporting agency" and that the Property Report was a "consumer report" within the meaning of the FCRA. Plaintiff's Complaint also alleges specific facts that show precisely how First American and the Property Report fit into those statutory definitions.

In March 2023, Plaintiff alleges that he applied for a consolidation loan from Members Credit Union ("the Credit Union"). Complaint [Dkt. No. 1] at ¶ 33. Plaintiff further alleges that, in response to Plaintiff's application, the Credit Union sought information from First American that the Credit Union would use in evaluating Plaintiff's loan application. *See id.* at ¶ 34. Plaintiff alleges that First American "is a 'consumer

reporting agency' as defined in 15 U.S.C. § 1681a(f) and is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties." *Id.* at ¶ 18. Plaintiff also alleges that, in response to the Credit Union's request, First American provided the Credit Union with a report about Plaintiff. *Id.* at ¶ 34. The Complaint recognizes that First American referred to this report as a "Property Report." *Id.* Plaintiff's application was approved in March 2023, but Plaintiff chose not to proceed with the loan. Id. at ¶ 35

In October 2023, after incurring some significant and unexpected expenses, Plaintiff again applied to the Credit Union for a consolidation loan. Complaint [Dkt. No. 1] at ¶ 38. "First American sold another credit report about Plaintiff to Members Credit Union in response to Plaintiff's credit application." Id. This time, the Credit Union denied Plaintiff's application. *Id.* at ¶ 40. Plaintiff specifically alleges that an employee or agent of the Credit Union informed Plaintiff that he did not qualify for the loan because consumer reports about him showed that he had three outstanding judgments/liens against him. *Id.* ¶ 41.

Plaintiff knew that the information about the judgment liens was erroneous, and he tried to discover who had reported it. He inquired with the three principal consumer reporting agencies ("CRAs"), Experian, Equifax, and Trans Union, asking each whether it was reporting any judgments or liens against him; each denied reporting any such information. Complaint [Dkt. No. 1] at ¶¶ 45-46. Plaintiff later discovered that First American was the source of this erroneous reporting. The Complaint alleges that "First American inaccurately published in the consumer report to Members Credit Union several

pieces of information that did not belong to Plaintiff." *Id.* at ¶ 47. First American reported that there were three judgment liens against Plaintiff in its listing of "Other Liens of Record/Other Records" in the Property Report. *Id.* at ¶ 48. The liens listed there were not, in fact, against Plaintiff. *Id.* Rather, they were against a different consumer, and First American's Property Report mixed information about Plaintiff and his residential property with information about another consumer. *Id.* at ¶ 49

Plaintiff brought this action to recover for the injuries he suffered as a result of First American's erroneous reporting, which violated the requirements of the FCRA. Plaintiff's Complaint asserts a single cause of action, arising under 15 U.S.C. § 1681e(b), which requires CRAs to follow reasonable procedures to assure maximum possible accuracy in their consumer reports. Complaint [Dkt. No. 1] at ¶¶ 77-84. In setting forth the factual elements of this cause of action, Plaintiff's Complaint again alleges that: First American is a "consumer reporting agency" as that term is defined by the FCRA (*id.* at ¶ 78); that Plaintiff is a "consumer" within the meaning of the FCRA (*id.* at ¶ 79); and that "Defendant's above-mentioned 'Property Report' was a 'consumer report' as that term is defined by 15 U.S.C. § 1681a(d)." *See, e.g., id.* at ¶¶ 40, 80.

In its Answer, First American denies that it is a "consumer reporting agency" within the meaning of the FCRA. Answer [Dkt. No. 10] at ¶¶ 18, 78. First American also denies that the Property Report was a "consumer report" for the purposes of the FCRA. *Id.* at ¶ 80. To support these allegations, First American attaches two extraneous documents to its Answer: a copy of its contract with the Credit Union, in connection with which it provided the Property Report; and documents that, according to First American, come from a North

Carolina attorney who performed an inquiry into the status of the title to Plaintiff's home. Exhibits C & D to Answer [Dkt. Nos. 10-3 & 10-4]. First American offers no authentication for either document. First American alleges that the information about judgment liens in its Property Report came from the "title abstract obtained by an attorney conducting a search for a preliminary opinion on title." Answer [Dkt. No. 10] at ¶ 48.

## III. **LEGAL STANDARD**

First American brings its motion under Fed. R. Civ. P. 12(c). Rule 12(c) provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Like a motion to dismiss under Fed. R. 12(b)(6), a motion for judgment on the pleadings "tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve contests surrounding the facts, determine the merits of a claim or address potential defenses." *Jarrett v. Experian Info. Sols*., No. 3:20cv125 (DJN), 2021 U.S. Dist. LEXIS 70570, at *8-9 (E.D. Va. Apr. 12, 2021) (citing *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). And, as with a motion to dismiss, in considering a motion for judgment on the pleadings, the Court will accept a plaintiff's well-pleaded allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.2d 1130, 1134 (4th Cir. 1993).

A motion for judgment on the pleadings differs from a motion to dismiss in that it "expands the universe of documents that the Court may consider. In addition to the complaint, the Court may consider the answer, exhibits to the answer and 'exhibits to the Rule 12(c) motions that were integral to the complaint and authentic.'" *Jarrett,* 2021 U.S.

Dist. LEXIS 70570 at *10 (quoting *Massey v. Ojaniit*, 759 F.3d 343, 347-48 (4th Cir. 2014)). When considering such documents along with the pleadings, "a court should only grant a motion for judgment on the pleadings when no genuine issues of material fact remain and 'only questions of law remain.'" *Jarrett*, 2021 U.S. Dist. LEXIS 70570 at *10 (quoting *Virginia Imports v. Kirin Brewery of Am.*, 296 F. Supp. 2d 691, 695 (E.D. Va. 2003)).

## IV. ARGUMENT

### A. A court may grant judgment on the pleadings when it determines that there are no material questions of fact after reviewing the pleadings and any authenticated documents that are central to the plaintiff's claims. Conflicting allegations in the Complaint and Answer create material questions of fact about whether the Property Report was a "consumer report," and First American's unauthenticated exhibits do not preclude those factual questions.

The FCRA includes an express definition of "consumer report." 15 U.S.C. § 1681a(d). This statutory definition is very broad, encompassing a wide variety of factors that would bring many different types of reports or documents within the definition. Section 1681a(d) begins with a core definition of "consumer report," which includes a catch-all category that implicates the provisions of 15 U.S.C. § 1681b. Section 1681a(d) also describes certain specific types of reports or documents that are excluded from the definition of "consumer report."

According to § 1681a(d)(1), "consumer report" is generally defined as:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or

> mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
>
> (A) credit or insurance to be used primarily for personal, family, or household purposes;
>
> (B) employment purposes; or
>
> (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).

Section 1681b(a) defines the permissible purposes for consumer reports beside applications for credit, insurance, or employment. Among other things, this subsection provides that a "consumer report" can include a report or communication of information that is issued to a person who "has a legitimate business need for the information" that is "in connection with a business transaction initiated by the consumer" or "to review an account to determine whether the consumer continues to meet the terms of the account." 15 U.S.C. § 1681b(a)(3)(F)).

The definition of "consumer report" in § 1681a(d) specifically identifies certain reports that are excluded from the definition of "consumer report. 15 U.S.C. § 1682a(d)(2). The following kinds of reports are excluded:

- reports "containing information solely as to transactions or experiences between the consumer and the person making the report" (§ 1681a(d)(2)(A)(i));
- "communication of that information among persons related by common ownership or affiliated by corporate control" (§ 1681a(d)(2)(A)(ii));
- "communication of other information" among the owners or control group

of a corporation, as long as such communication is disclosed to the consumer and as long as the consumer has an opportunity to direct that the information not be communicated ” (§ 1681a(d)(2)(A)(iii));

- “any authorization or approval of a specific extension of credit directly or indirectly by the issuer of a credit card or similar device” (§ 1681a(d)(2)(B)); and

- “any report in which a person who has been requested by a third party to make a specific extension of credit directly or indirectly to a consumer conveys his or her decision with respect to such request, if the third party advises the consumer of the name and address of the person to whom the request was made, and such person makes the disclosures to the consumer required under section 1681m of this title” (§ 1681a(d)(2)(C))

- Certain other communications specified in § 1681a(o) and (x).

The numerous factors pertaining to the definition of “consumer report” can be collected in terms of three general elements: “(1) information communicated by a consumer reporting agency; (2) bearing on any one of a list of factors, and (3) that is used or expected to be used or collected in whole or in part for any one of several purposes.” *Benzing v. Tharrington-Smith, LLP*, No. 5:10-CV-533-F, 2012 U.S. Dist. LEXIS 6120, at *10 (E.D.N.C. Jan. 19, 2012) (citing *Yang v. Government Employees Ins. Co.*, 146 F.3d 1320, 1323 (11th Cir. 1998).

When a defendant seeks judgment at the pleadings stage by arguing that the plaintiff has not alleged or cannot prove that the defendant issued a “consumer report,” the court must assess the relevant allegations from the Complaint in terms of the three general elements comprising the statutory definition of “consumer report.” *See Benzing*, 2012 U.S. Dist. LEXIS 6120 at *10-14. If the plaintiff alleges facts that would permit plausible

inferences to establish each of the three elements, then the defendant is not entitled to judgment. *Id*.

Plaintiff alleges facts to permit inferences that the Property Report meets each of the three general elements. With respect to the first element, Plaintiff alleges that First American is a consumer reporting agency. Complaint [Dkt. No. 1] at ¶¶ 18, 78. More specifically, he alleges facts showing that First American provides information to lenders about judgment liens against applicants for credit and that First American frames this information in a document that it entitles "Property Report." *Id*. at ¶¶ 34, 38, 47-49. Plaintiff also alleges that First American provided such information to the Credit Union about him on more than one occasion. *Id*. Taken together, these allegations, if supported by evidence, would permit a jury to find that the Property Report satisfied the first element of the general definition of "consumer report."

Plaintiff alleges facts to establish the second element of that definition as well. Because the information in the Property Report pertains to judgment liens, it bears upon Plaintiff's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living." 15 U.S.C. § 1681a(d)(1).

Finally, Plaintiff's Complaint includes allegations that would satisfy the third element of the definition of "consumer report." Plaintiff alleges that the Property Report was issued for purposes identified in § 1681a(d)(1). By alleging that the Property Report was issued in connection with his application for a consolidation loan, and by alleging that, in October 2023, he applied for the consolidation loan on account of repair and appliance costs for his home, Plaintiff has alleged facts tending to show that the information about

him in the Property Report was for "credit or insurance to be used primarily for personal, family, or household purposes." Complaint [Dkt. No. 1] at ¶¶ 34-38; *see also* 15 U.S.C. § 1681a(d)(1)(A). These allegations would also bring the Property Repot under the definition of "consumer report" through § 1681a(d)(1)(C) and § 1681b. As alleged by Plaintiff, the Property Report was issued to a person, the Credit Union, that "has a legitimate business need for the information," which is "in connection with a business transaction initiated by the consumer" or "to review an account to determine whether the consumer continues to meet the terms of the account." 15 U.S.C. § 1681b(a)(3)(F).

First American does not argue that the Property Report fits within one of the exclusions to the definition of "consumer report," which are set forth in § 1681a(d)(2). Indeed, it could not do so in any event. There are no factual allegations in either party's pleading to support an inference that the Property Report would be covered by one of the statutorily defined exclusions.

First American offers arguments about why the Property Report should not be defined as a consumer report, but none of those arguments warrant judgment on the pleadings. In fact, First American's arguments depend upon evidence that has not been authenticated and is not central to Plaintiff's claims. As such, it cannot be the basis for judgment on the pleadings. At best, First American's arguments show that there are disputes of material fact relevant to the classification of the Property Report.

First American's primary argument is that the Property Report cannot be a "consumer report" because its subject is the title to Plaintiff's property, not Plaintiff himself. First American's Memorandum [Dkt. No. 14] at p. 5. This argument fails for both

legal and factual reasons.

First, as a matter of law, the plain language of § 1681a(d) makes it clear that the definition of "consumer report" does not turn on the title of a communication or on its ostensible subject matter; it turns on the nature of the information included in the report. If a report or communication includes information "bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living," and if that information is used for one of the purposes enumerated in § 1681a(d)(1) and § 1681b, the document fits within the definition of "consumer report," even if there is information about other subjects in the same document. As a California federal court has explained:

> it is the information in the communication, not the communication itself, that must be of the kind that *is used or expected to be used or collected in whole or in part* for the purposes of serving as a favor in credit, employment, or insurance decisions or other reasons allowed under the FCRA.

*Mintun v. Equifax Info. Servs., LLC*, 535 F. Supp. 3d 988, 994 (D. Nev. 2021) (emphasis in original).

Second, Plaintiff has alleged facts showing that the information about judgment liens in the Property Report was used by the Credit Union as a factor in its decision-making on his application for a consolidation loan. Moreover, Plaintiff's allegations on this point are not vague or conclusory. He specifically alleges that an employee or agent of the Credit Union told him that the application was denied because of the judgment liens. Complaint [Dkt. No. 1] at ¶ 41. Plaintiff further alleges that the Property Report was the sole source of the erroneous information that there were judgment liens against Plaintiff. *Id.* at ¶¶ 45-

47. Regardless of how First American wishes to characterize the report or its primary purpose, Plaintiff has alleged facts showing that the Property Report included the kind of information and was issued for the specific purposes that the FCRA identifies as the distinguishing characteristics of a "consumer report."

First American tries to buttress its unsustainable factual argument by pointing to two exhibits to its Answer: its contract with the Credit Union, and a "title abstract" that it apparently used in compiling the Property Report. First American's Motion [Dkt. No. 14] at 5-6. But this evidence cannot support a judgment on the pleadings for two reasons. First, a court can rely on attachments to the pleadings only when they are authenticated and are integral to the plaintiff's allegations. *Jarrett v. Experian Info. Sols*., No. 3:20cv125 (DJN), 2021 U.S. Dist. LEXIS 70570, at *10 (E.D. Va. Apr. 12, 2021) (citing *Massey v. Ojaniit*, 759 F.3d 343, 347-48 (4th Cir. 2014)). This Court could consider First American's exhibits if they met both of these requirements, but the exhibits fail to meet either. Second, even if they are considered on their face, they do not preclude factual questions about the nature of the Property Report. First American can point to them as evidence relevant to those factual questions, but that is not enough to permit judgment on the pleadings. Indeed, by pointing to these documents, First American has merely highlighted the factual questions raised by Plaintiff's allegations; it has not foreclosed those questions.

## V. CONCLUSION

By its plain terms, the FCRA applies to reports that contain information about a consumer's credit history and that are used for the purpose of evaluating a consumer's

credit worthiness. Plaintiff has alleged specific facts to prove that the FCRA applies to the Property Report, and First American has failed to negate those allegations solely on the basis of the pleadings. First American is not entitled to judgment on the pleadings under Fed. R. Civ. P. 12(c).

Respectfully submitted this 14th day of February 2024.

**CONSUMER ATTORNEYS**

By: *<u>/s/ Dawn McCraw</u>*
Dawn McCraw, NC Bar No. 54714
CONSUMER ATTORNEYS
8245 N. 85th Way
Scottsdale, AZ 85258
T: (818) 600-5585
E: dmccraw@consumerattorneys.com
*Attorney for Plaintiff*
*James Joyce*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 14, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.

**CONSUMER ATTORNEYS**

By: *<u>/s/ Dawn McCraw</u>*