IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
JAMES JOYCE,                    )
                                )
          Plaintiff,            )
                                )
     v.                         )        1:23cv1069
                                )
FIRST AMERICAN MORTGAGE,        )
SOLUTIONS, LLC,                 )
          Defendant.            )
```

**MEMORANDUM ORDER**

THOMAS D. SCHROEDER, District Judge.

Plaintiff James Joyce ("Joyce") brings this action against First American Mortgage Solutions, LLC ("First American"), seeking to recover damages for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681e(b). (Doc. 1.) First American filed an answer (Doc. 10) and moved shortly thereafter for judgment on the pleadings, arguing that Joyce's FCRA claim fails as a matter of law. (Docs. 12, 14.) Joyce filed a response in opposition (Doc. 15), and First American replied (Doc. 17). For the reasons set forth below, First American's motion will be denied.

I.  BACKGROUND

In considering this motion for judgment on the pleadings, the court accepts as true the following facts alleged in nonmovant Joyce's complaint:

On March 23, 2023, Joyce applied for a consolidation loan

with Members Credit Union ("Members"). At Members' request, First American prepared a report about Joyce and his property and sold it to Members. Joyce was approved for the consolidation loan but chose not to proceed with the borrowing. (Doc. 1 ¶¶ 33-35.)

Months later, Joyce once again applied for a consolidation loan with Members. On October 10, 2023, First American sold a credit report about Joyce to Members in response to Joyce's credit application. (Id. at ¶ 38.) This second report (the "Property Report") combined information about Joyce with information about a similarly named consumer. (Id. at ¶ 49.) Specifically, the Property Report listed judgments entered against "James Joyce D/B/A AMPM Appliance" and "James F. Joyce," when in reality these judgments had nothing to do with Joyce. (Id. at ¶¶ 54-59, 63-64.) Relying on these apparent judgments in the Property Report, Members denied Joyce's second application for a consolidation loan. (Id. ¶¶ 40-41.)

Joyce filed this action in response. The sole count of the complaint alleges that First American violated § 1681e(b) of the FCRA by willfully or negligently failing to establish or to follow "reasonable procedures to assure maximum possible accuracy" in preparing the Property Report it published to Members. (Id. ¶¶ 81, 83.) Plaintiff Joyce seeks to recover actual, statutory, and punitive damages as well as reasonable attorney's fees and costs. (Id. ¶¶ 82, 84.) First American filed an answer, attaching a copy

2

of three documents it contends are integral to Joyce's claim (Doc. 10), and now moves for judgment on the pleadings.

## II. ANALYSIS

### A. Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The pleadings are "closed" after the complaint and answer are filed, along with any reply to additional claims asserted in any counterclaim. See Fed. R. Civ. P. 7(a); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1367 (3d ed. 2004). A motion for judgment on the pleadings pursuant to Rule 12(c) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002); see Conner v. Cleveland County, N. Carolina, 22 F.4th 412, 420 (4th Cir. 2022). Accordingly, when a court evaluates a motion for judgment on the pleadings, it must construe the facts and reasonable inferences in the light most favorable to the nonmoving party. Massey v. Ojaniit, 759 F.3d 343, 347, 352–53 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by, Reed v. Town of Gilbert, 576 U.S. 155 (2015). A pleading "must contain sufficient factual matter . . . to 'state a claim to relief that

3

is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible when the pleading contains "factual content that allows the court to draw the reasonable inference that [the movant] is liable for the misconduct alleged." Id.

In applying this standard, the court must accept as true the facts alleged in the pleading and all reasonable inferences must be drawn in the non-movant's favor. Burbach, 278 F.3d at 405–06; Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, the court "need not accept the legal conclusions drawn from the facts." Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769, 776 (4th Cir. 2013) (quoting E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)). "[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts," and a court does not consider "unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); see also Iqbal, 556 U.S. at 678 (explaining that mere legal conclusions are not accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" (alteration in original) (citing Twombly, 550 U.S. at 555)). At bottom, a motion for judgment on the pleadings is properly granted

4

only if taking all of the non-moving party's factual allegations as true, no genuine dispute of material fact remains, and the case can be determined as a matter of law. Smith v. McDonald, 562 F. Supp. 829, 842 (M.D.N.C. 1983), aff'd, 737 F.2d 427 (4th Cir. 1984), aff'd, 472 U.S. 479 (1985).

In "determining a motion for judgment on the pleadings, the court may consider documents incorporated by reference in the pleadings" without converting the motion into one for summary judgment. Farmer v. Wilson Hous. Auth., 393 F. Supp. 2d 384, 386 (E.D.N.C. 2004) (internal quotation marks omitted) (citing Parks v. Alteon, Inc., 161 F. Supp. 2d 645, 649 n.1 (M.D.N.C. 2001)). However, documents attached to the answer are part of the pleadings for Rule 12(c) purposes only if the documents are integral to the complaint and authentic. See Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 164 (4th Cir. 2016); Pulte Home Corp. v. Montgomery County, MD, 909 F.3d 685, 693-94 (4th Cir. 2018) (applying Goines in the 12(c) context). A document is considered integral to the complaint where the plaintiff's claims turn on, or are otherwise based on, the contents of the document. See Goines, 822 F.3d at 166. "When the plaintiff . . . incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document," the court may credit the document over conflicting allegations in the complaint. Id. at 167. However,

5

it is inappropriate to treat the contents of a document as true where the plaintiff incorporates the document for purposes other than its truthfulness.  Id.  "The purpose for which the document is offered is particularly important where the document is one prepared by or for the defendant."  Id. at 168.

B.  **Documents Attached to the Answer**

First American has attached three exhibits to its answer that it contends the court should consider: the Property Report itself (Doc. 10-2); an attorney-prepared title abstract that was used to prepare the Property Report (the "Title Abstract") (Doc. 10-4); and an End User License Agreement governing Members' purchase of the Property Agreement (the "EULA") (Doc. 10-3).  (See Doc. 14 at 5-6.)  Joyce argues that the court should not consider the Title Abstract or the EULA when deciding this motion because they are neither "integral to [his] allegations" nor "authenticated." (Doc. 15 at 12 (citing Jarrett v. Experian Info. Sols., Inc., No. 3:20CV125, 2021 WL 1381132, at *3 (E.D. Va. Apr. 12, 2021).)  In reply, First American argues that both the Title Abstract and the EULA are integral to Joyce's claim because they relate directly to the Property Report which "is at the heart of [Joyce's] complaint," and that Joyce "fails to dispute or challenge the authenticity" of either document.  (Doc. 17 at 6-7.)  Before addressing the dispositive motion, the court must determine which, if any, of these documents it may consider.

6

### 1. Property Report

Joyce does not challenge the authenticity of the Property Report or object to its consideration. (See Doc. 15 at 12.) The complaint unambiguously alleges its existence (Doc. 1 ¶ 38), and it is integral to the complaint in that First American's alleged violation of the FCRA arose from the preparation and publication of that report. (Id. ¶ 81.) Because the document is integral to the complaint and its authenticity is not disputed, the court may consider it when evaluating the present motion.

### 2. Title Abstract and EULA

First American also attaches to its answer copies of the Title Abstract (Doc. 10-4) and EULA (Doc. 10-3). Joyce objects to the consideration of both documents as not having been authenticated. (Doc. 15 at 12.) First American responds that Joyce has "fail[ed] to dispute and challenge" the authenticity of either. (Doc. 17 at 7.) However, it is First American's burden as the party offering the documents to authenticate them, not Joyce's burden to discredit them. See Jarrett, 2021 WL 1381132, at *6 (declining to consider a document attached to the defendant's answer because the defendant failed to establish its authenticity by affidavit or otherwise). Here, First American has not established the authenticity of either the Title Abstract or EULA. Both documents are communications between First American and third parties. (See Doc. 14 at 5-6.) Joyce's complaint does not allege or imply the existence of either

7

document.  Thus, their existence is deemed disputed at this stage.

Further, neither the Title Abstract nor the EULA is integral to Joyce's claim.  First American argues that they are integral because they relate respectively to the Property Report's generation and the terms and conditions of its publication to Members.  (Doc. 17 at 6.)  But Joyce's claim does not rest on the documents that First American relied on in preparing the Property Report, nor does it rest on the putative terms of its publication.  While the Title Abstract and EULA may be integral to First American's defenses, they cannot be considered at the pleadings stage on that basis.   The complaint does not allege the existence of either of them.  Therefore, the court will not consider them here.[1]

## C.   Motion for Judgment on the Pleadings

The complaint alleges that First America's preparation and publication of the Property Report violated § 1681e(b) of the FCRA, which provides:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b).  First American argues that the Property Report is not a "consumer report" as defined in the FCRA and that

---

[1] Even if they were considered at this stage, they do not permit the court to rule in First American's favor as a matter of law at this stage for the reasons noted infra.

Joyce's claim must fail as a matter of law. (Doc. 14 at 4–6.)[2] Joyce responds that the allegations of the complaint, taken as true, show that the report meets the statutory definition of a "consumer report," which provides:

> The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
>
>> (A) credit or insurance to be used primarily for personal, family, or household purposes.
>> (B) employment purposes; or
>> (C) any other purpose authorized under section 1681b of this title.

(Doc. 15 at 6-10 (citing 15 U.S.C § 1681a(d)(1)).)

The statutory definition of "consumer report" has three fundamental elements: (1) a communication of information by a "consumer reporting agency" that (2) bears on any one of a list of factors and (3) is "used or expected to be used or collected in whole or in part" for any one of several purposes. Yang v. Gov't Emps. Ins. Co., 146 F.3d 1320, 1323 (11th Cir. 1998). Here, First American's briefing addresses the second and third elements, which are in dispute.[3]

---

[2] While the FCRA contains several exclusions from what constitutes a "consumer report," 15 U.S.C. § 1681a(d)(2), First American does not argue any of them here.

[3] In its answer, First American denies it is a "consumer reporting

9

First American contends that the Property Report does not meet the second element of the definition of a "consumer report" because the information in it does not "bear on" Joyce's creditworthiness or other characteristics, as it analyzes Joyce's <u>property</u> and not Joyce himself. (Doc. 14 at 5.) But, as Joyce argues, his complaint and the Property Report itself undermine this argument. To be sure, many of the specific details described in the Property Report — the validity of Joyce's interest, the property's tax status, the presence of any other mortgages, deeds of trust, or liens — relate to Joyce's property and its ability to bear a loan secured by it. (Doc. 10-2.) But more importantly, the complaint alleges that the Property Report, which lists Joyce under the heading "Borrower" (<u>id.</u>), did not simply report on mortgages on property owned by Joyce, but in a section titled "Other Liens of Record Other Records" reported two judgments against Joyce personally (Doc. 1 ¶¶ 48, 54(a) and (c)), as well as a judgment in Joyce's favor (<u>id.</u> ¶ 54(b)). Joyce alleges that these judgments are not related to him but were erroneously

---

agency." (<u>Cf.</u> Doc. 1 ¶¶ 18, 78; Doc. 10 ¶¶ 18, 78.) However, it has not advanced an argument on this point in its briefing (<u>see</u> Docs. 14, 17), while Joyce contends in his brief that First American constitutes a consumer reporting agency (Doc. 15 at 9). Thus, the court does not reach this question at this time. First American's argument that it did not intend for the Property Report to constitute a "consumer report," <u>infra</u>, would be relevant to this determination at the fact development stage. <u>See, e.g.</u>, <u>Kidd v. Thomson Reuters Corp.</u>, 925 F.3d 99 (2d Cir. 2019) (finding that an entity must have the specific intent to provide a "consumer report").

10

included in his Property Report because First American mixed another consumer's information in his file. (Id. ¶¶ 49, 55-64.)

First American further argues that the information in the Property Report does not meet the third element of the definition of "consumer report" because it was not expected to be used or collected for the purpose of evaluating Joyce's creditworthiness. (Doc. 14 at 6; Doc. 17 at 5.) But the complaint plausibly alleges that First American intended the Property Report to be used by Members, with whom Joyce had applied for a consolidation loan and for whom First American prepared the document, for consideration in extending credit to Joyce. (Doc. 1 ¶ 38 ("On October 10, 2023, First American sold a credit report about Plaintiff to Members Credit Union in response to Plaintiff's credit application.").) These allegations, when considered in the light most favorable to Joyce as they must at this stage, plausibly allege that First American intended that the Property Report be used, and it was used, for "the purpose of serving as a factor in establishing the consumer's eligibility for - credit." 15 U.S.C. §1681a(d)(1). Whether that was so will depend on factual proof.

First American cites Benzing v. Tharrington-Smith, LLP, No. 5:10-CV-533-F, 2012 WL 1015957, at *1 (E.D.N.C. Mar. 23, 2012), to argue that its intent in preparing the Property Report, as reflected in the Title Abstract and EULA, is dispositive. (Doc. 17 at 5.) While those documents certainly are highly relevant to

11

the issue of First American's intent, there are at least two reasons this contention cannot prevail at this stage.

First, the court has determined that neither document should be considered at this pleading stage as integral to the complaint. But even were the court to consider them, neither would alter the outcome of the present motion. While the EULA provides that the Property Report cannot be deemed "collected for credit purposes" or any of the other purpose enumerated in the FCRA and expressly prohibits any use that would cause it to be construed as a "consumer report" under the FCRA (Doc. 10-3 at 4), this disclaimer does not allow the court to determine <u>as a matter of law</u> that Joyce's Property Report was not a "consumer report" when set against the conflicting allegations of the complaint. (Doc. 10-2; Doc. 1 ¶ 38.) <u>See</u> <u>Kidd</u>, 925 F.3d at 106-07 (noting, in dicta, that "an entity may not escape regulation as a 'consumer reporting agency' by merely disclaiming an intent to furnish 'consumer reports' and that "[f]or the purposes of the FCRA, indeed for any scienter determination, the totality of a defendant's actions is the determining factor, not the defendant's mere disclaimer of the requisite intent"); <u>Dias v. Blackstone Consulting, Inc.</u>, No. 5:23-cv-497, 2024 WL 2132627, at *13 (M.D. Fla. Apr. 30, 2024) (denying summary judgment where a report disclaimed status as a "consumer report" and warned that it could not be used for employment decision-making, but the defendant was aware the report was being

12

used for such purposes).

Second, Benzing is distinguishable. There, the court found that a communication was not a consumer report when "no one involved . . . intended the information compiled to be used for employment or credit determination purposes" and the communication had not, in fact, been used for such purposes. 2012 WL 1015957, at *1. Here, by contrast, Joyce has specifically alleged that Members used the Property Report to determine his credit eligibility and that First American provided the report "in response to Plaintiff's credit application." (Doc 1 ¶¶ 38, 40-41.) This creates a fact question of First American's intent in providing the report.

Finally, First American contends that finding the Property Report a "consumer report" subject to the FCRA would render every abstract or opinion of title a "consumer report" subject to the act. (Doc. 17 at 4.) To be sure, neither party has submitted, nor has the court found, any case holding that a title abstract or title opinion is a consumer report under the FCRA. Cf. Fuges v. Sw. Fin. Servs., Ltd., 707 F.3d 241, 247 n.11 (3d Cir. 2012) (noting that "FCRA does not specifically except 'property reports' or any similar reports from the definition of 'consumer reports,' and we neither express nor imply any opinion on whether property reports of the kind at issue here are covered by FCRA"). But that concern is premature. There are fact questions as to the intended

13

purpose of the Property Report, which allegedly contains information bearing specifically on Joyce's eligibility as a borrower, and not simply judgments and liens on his real property. Moreover, the court has made no determination that the Property Report constitutes a "consumer report" within the meaning of the FCRA, only that Joyce has plausibly alleged it at this early stage.

In sum, Joyce has plausibly alleged that the information published in the Property Report bore on his creditworthiness, that Members actually used the Property Report to determine his eligibility for credit, and that First American knew Members' purpose for the report. Whether First American intended the Property Report to be used as a "consumer report" is a fact question not suitable for resolution at this pleadings stage. Therefore, First American's motion for judgment on the pleadings will be denied.

## III. CONCLUSION

For the reasons stated,

IT IS ORDERED that First American's motion for judgment on the pleadings (Doc. 12) is DENIED.

                                                /s/   Thomas D. Schroeder
                                                 United States District Judge

September 30, 2025